JUDGE KAPLAN

KENNETH J. MONTGOMERY, PLLC
Victor A. Dunlop (VAD-8571)
198 Rogers Avenue
Brooklyn, New York 11225
(718) 403-9261 Telephone
(614) 455-9261 Facsimile

13 CV 7108

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANGEL RIVERA,

                    Plaintiff,

      -against-

CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT, DETCTIVE FRANK LAMAGRA
(Shield #00819), DETECTIVE KEITH CARPENTER (Shield
#5123), DETECTIVE ABEL JOSEPH (Shield #02050), DETECTIVE
RICHARD BAEZ (Shield # 06849), and P.O.s JOHN and JANE
DOE #1-10 (the names John and Jane Doe being fictitious, as the true
names are presently unknown), Individually and in their official
capacity,

                    Defendants.
------------------------------------------------------------X

COMPLAINT



Docket No:

Jury Trial Demanded

    Plaintiff ANGEL RIVERA, by his attorneys, Kenneth J. Montgomery, PLLC, hereby respectfully alleges for his complaint against the City of New York, the New York City Police Department, Detective Frank Lamagra, Detective Keith Carpenter, Detective Abel Joseph, Detective Richard Baez, and P.O.s John and Jane Doe 1-10 (collectively, "Defendants") as follows:

## NATURE OF THE INSTANT ACTION

    1.    This is a civil action, brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the Fourth and Fourteenth Amendments to the United States Constitution, and under the common law and the constitution of the State of New York, against the City of New York (the "City"), Detective Frank Lamagra, Detective Keith Carpenter, Detective Abel Joseph, Detective Richard Baez, and P.O.s John and Jane Doe 1-10, and their employer, the New York City Police Department (the "NYPD").

2. The instant action seeks to hold the Defendants liable for misconduct under the federal civil rights statute, 42 U.S.C. §1983 and *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). The unlawful actions of the Defendants, alleged hereunder, resulted from affirmative *de facto* municipal policies, practices and customs to violate the constitutional rights of criminal suspects and defendants, or from deliberate indifference by policy-making officials, acting on behalf of the City of New York, to such violations.

3. As Plaintiff will demonstrate hereunder, as a matter of policy, the actions of Detective Frank Lamagra, Detective Keith Carpenter, Detective Abel Joseph, Detective Richard Baez, and P.O.s John and Jane Doe 1-10, all of whom violated the constitutional and civil rights of the Plaintiff, reflect a corrupt culture of misconduct and physical abuse indicative of NYPD police officers that has long existed at New York City Police precincts.

4. By this action, Plaintiff seeks redress for the violations of his constitutional and civil rights and to recover damages he suffered as a result of the incidents complained of hereunder, including but not limited to damages for severe physical injuries, legal fees, costs and expenses associated with defending the criminal proceedings, loss of reputation, costs and expenses, mental anguish, pain and suffering, inconvenience, humiliation, and fear.

## JURISDICTION AND VENUE

5. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §1331 and §1343, as this action seeks redress for the violation of Plaintiff's federal constitutional and civil rights.

6. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c).

## PARTIES

7. Plaintiff, Angel Rivera is a Latino male and was and still is a resident of the State of New York, Bronx County.

2

8. At all times hereinafter mentioned, Defendant City of New York ("City") is a municipal entity created and authorized under the laws of the State of New York. Upon information and belief, it is authorized under the laws of the State of New York to maintain a police department, the NYPD, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers. The NYPD's operations include the operations as described herein. Upon information and belief, the federal government partially funds the law enforcement activities of the NYPD.

9. At all times hereinafter mentioned, Defendant New York City Police Department ("NYPD") is an agency of the City of New York.

10. At all times hereinafter mentioned, upon information and belief, Detective Frank Lamagra (Shield # 00819), a defendant named hereunder, holds a supervisory position as an agent and employee of the NYPD. The NYPD is legally responsible for torts its agents and employees commit within the scope of his/her employment and/or under color of law.

11. At all times hereinafter mentioned, Defendant Detective Frank Lamagra, at all relevant times, is and was a commissioned officer employed by the NYPD, and acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the City of New York and acted within his scope of employment. He is sued in both, his individual and official capacities.

12. At all times hereinafter mentioned, upon information and belief, Detective Keith Carpenter (Shield # 5123), a defendant named hereunder, holds a supervisory position as an agent and employee of the NYPD. The NYPD is legally responsible for torts its agents and employees commit within the scope of his/her employment and/or under color of law.

13. At all times hereinafter mentioned, Defendant, Detective Keith Carpenter, at all relevant times, is and was a commissioned officer employed by the NYPD, and acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the City of New York and acted within his scope of employment. He is sued in both, his individual and official capacities.

14. At all times hereinafter mentioned, upon information and belief, Detective Abel Joseph (Shield # 02050), a defendant named hereunder, holds a supervisory position as an agent and employee of the NYPD. The NYPD is legally responsible for torts its agents and employees commit within the scope of his/her employment and/or under color of law.

15. At all times hereinafter mentioned, Defendant, Detective Abel Joseph, at all relevant times, is and was a commissioned officer employed by the NYPD, and acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the City of New York and acted within his scope of employment. He is sued in both, his individual and official capacities.

16. At all times hereinafter mentioned, upon information and belief, Detective Richard Baez (Shield # 06849), a defendant named hereunder, holds a supervisory position as an agent and employee of the NYPD. The NYPD is legally responsible for torts its agents and employees commit within the scope of his/her employment and/or under color of law.

17. At all times hereinafter mentioned, Defendant, Detective Richard Baez, at all relevant times, is and was a commissioned officer employed by the NYPD, and acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the City of New York and acted within his scope of employment. He is sued in both, his individual and official capacities.

18. At all times hereinafter mentioned, upon information and belief, P.O.s John and Jane Doe 1-10, defendants named hereunder, hold supervisory positions as agents and employees of the NYPD. The NYPD is legally responsible for torts its agents and employees commit within the scope of his/her employment and/or under color of law.

19. Defendants, P.O.s John and Jane Doe 1-10, at all relevant times, are and were commissioned officers employed by the NYPD, and acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the City of New York and acted within their scope of employment. They are sued in both, their individual and official capacities.

20. At all times hereinafter mentioned, the Defendants, and each of them, separately, and in concert with each other engaged in acts and omissions which constituted deprivation of the rights, privileges and immunities of the Plaintiff, and while these acts were carried out under color of la, they had no justification or excuse in law, and were instead gratuitous, illegal, improper, and unrelated to any activity in which law enforcement officers may appropriately and legally engage in the course of protecting persons and property or insuring Civil order.

21. At all relevant times, the individually named defendants acted under color of state law in the course and scope of his duties and functions as an agent, employee, and officer of the City of New York and the NYPD.

22. At all relevant times, defendant, City, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD employees. In addition, defendant, City, was responsible for ensuring that its employees, including each of the individually named defendants, obey the laws of the United States and the laws of the State of New York.

## JURY DEMAND

23. Plaintiff demands a jury in this action.

## FACTUAL ALLEGATIONS

### Incident 1

24. On October 8, 2010, at approximately 11:20 A.M., while Plaintiff was lawfully operating a motor vehicle, at or around 106th Street between 1st Avenue and 2nd Avenue, in the County of New York, City and State of New York, when officers of the NYPD, including Detective Frank Lamagra and Detective Keith Carpenter, signaled for the operator to pull over without probable cause and the vehicle's operator complied.

25. Defendants, Detective Frank Lamagra and Detective Keith Carpenter, approached the Plaintiff's vehicle and forcibly removed the Plaintiff from the vehicle.

26. Defendants, Detective Frank Lamagra and Detective Keith Carpenter, then handcuffed the Plaintiff outside of his vehicle, and searched both the Plaintiff and his vehicle without probable cause to do so.

27. As a result of being forcibly removed from his vehicle the Plaintiff sustained physical injuries.

28. As a result of being handcuffed too tightly, the Plaintiff sustained physical injuries.

29. Upon information and belief, Plaintiff advised the aforementioned officers that he had a serious heart condition and needed his medication. However, the Defendants did not offer any medical attention to Plaintiff.

30. Despite Plaintiff advising Defendants of his heart condition, Defendants Detective Frank Lamagra, Detective Keith Carpenter, and P.O.s John and Jane Doe 1-10, deprived him of his heart medication for several hours, causing physical stress and injury to his heart.

31. The aforementioned officers forcibly put Plaintiff into a van, which upon information and belief was a vehicle owned and/or under the control of the NYPD, and drove around for several hours.

32. The Plaintiff was brought to the 25th Precinct, where he remained, in custody for several hours.

33. Defendants, City, NYPD, Detective Frank Lamagra, Detective Keith Carpenter, Detective Joseph Abel, and P.O.s John and Jane Doe 1-10, initiated criminal proceedings against the Plaintiff despite the Defendants' knowledge that they did not have probable cause to do so.

34. Subsequently, the Plaintiff was brought to New York County Central Booking, where he was arraigned on the charges of Criminal Possession of a Controlled Substance in the Third Degree and Criminal Possession of a Controlled Substance in the Seventh Degree.

35. Defendant Detective Frank Lamagra, falsely swore in a criminal court affidavit that he observed the plaintiff exchange an unidentified small object for a sum of United States Currency.

36. Defendants City, NYPD, Detective Frank Lamagra, Detective Keith Carpenter, Detective Joseph Abel, and P.O.s John and Jane Doe 1-10, knew or should have known that the charges were knowingly false and malicious.

37. Defendants City, NYPD, Detective Frank Lamagra, Detective Keith Carpenter, Detective Joseph Abel, and P.O.s John and Jane Doe 1-10, knew that they did not have probable cause to stop and search the Plaintiff.

38. Plaintiff was held and detained in police custody for approximately one (1) week.

39. During the period between October 8, 2010 and May 5, 2011, Plaintiff was required to make several court appearances in order to defend himself against the criminal proceedings that Defendants initiated against him.

40. The charges were disposed of in Plaintiff's favor or about May 5, 2011.

41. As a result of the foregoing, Plaintiff sustained, *inter alia*, physical injuries, emotional distress, embarrassment, humiliation, and the deprivation of his constitutional rights.

42. As a result of the foregoing, Plaintiff was caused to expend significant sums of money on medical treatment for his injuries, and on attorneys' fees to defend the charges initiated against him.

**Incident 2**

43. On October 29, 2010, at approximately 10:50 a.m., the plaintiff was in his motor vehicle, lawfully present in front of the Julia de Burgos Latino Cultural Center, 1680 Lexington

7

Avenue, County of New York, City and State of New York, when defendants, Detective Richard Baez and P.O.s John and Jane Doe 1-10, approached Plaintiff without probable cause to do so, and assaulted the Plaintiff, without identifying themselves.

44. Upon information and belief, Defendants Detective Richard Baez and/or P.O.s John and Jane Doe 1-10, struck Plaintiff in the head with a handgun.

46. Upon information and belief, Defendants Detective Richard Baez and/or P.O.s John and Jane Doe 1-10, repeatedly struck Plaintiff on or about his head and body with a baton.

47. Upon information and belief, Defendants Detective Richard Baez and/or P.O.s John and Jane Doe 1-10, threatened to shoot and kill Plaintiff while he was still in his motor vehicle.

48. Defendants Detective Richard Baez and/or P.O.s John and Jane Doe 1-10, handcuffed the Plaintiff, while he remained in his motor vehicle, securing his left hand to the interior of the car door and his right hand to the steering wheel.

49. Defendants Detective Richard Baez and/or P.O.s John and Jane Doe 1-10, continued to repeatedly strike, threaten and menace the Plaintiff even after he was handcuffed.

50. As a result of being assaulted, battered, and beaten, the Plaintiff sustained multiple and severe injuries.

51. Defendants Detective Richard Baez and/or P.O.s John and Jane Doe 1-10, then forcibly put Plaintiff into a van, which upon information and belief was a vehicle owned and/or under the control of NYPD, and drove around for several hours.

52. The Plaintiff was brought to the 25th Precinct, where he remained in custody for several hours.

53. Defendants, City, NYPD, Detective Richard Baez, Detective Abel Joseph, and P.O.s

John and Jane Doe 1-10, initiated criminal proceedings against the Plaintiff despite defendants' knowledge that they did not have probable cause to do so.

54. Subsequently, the Plaintiff was brought to New York County Central Booking, where he was arraigned on charges of Attempted Tampering with Physical Evidence and Criminal Possession of a Controlled Substance in the Seventh Degree.

55. Defendant Detective Richard Baez, knowingly provided false information, which served as the basis for the criminal court complaint against the Plaintiff, alleging, *inter alia*, that he observed a separately charged defendant, Alex Perez, sniff a glassine of heroin and swallow said glassine, and that he obtained a glassine of heroin from Plaintiff's hand and from Plaintiff's sweater.

56. Defendant Detective Abel Joseph, provided a sworn criminal court affidavit that he was informed by Detective Richard Baez of facts that served as the basis of the complaint, and which Detective Joseph knew to be false.

57. Defendants City, NYPD, Detective Richard Baez, Detective Joseph Abel, and John and Jane Doe 1-10, knew or should have known that the charges were knowingly false and malicious.

58. Defendants City, NYPD, Detective Richard Baez, Detective Joseph Abel, and John and Jane Doe 1-10, knew that they did not have probable cause to stop and search the Plaintiff or his vehicle.

59. Plaintiff was held and detained in police custody for approximately 24 hours.

60. During the period between October 29, 2010 and July 28, 2011, the Plaintiff was required to make several court appearances to defend himself against the criminal proceedings that Defendants initiated against him.

61. The charges were disposed of in Plaintiff's favor on or about July 28, 2011.

62. As a result of the foregoing, Plaintiff sustained, *inter alia*, severe physical injuries, emotion distress, embarrassment, humiliation, and the deprivation of his constitutional rights.

63. As a result of the foregoing, Plaintiff was caused to expend significant sums of money on medical treatment for his injuries, and on attorney's fees to defend the charges initiated against him.

## MUNICIPAL LIABILITY

### The NYPD's History of a Policy, Practice, and/or Custom of Excessive Force against Suspects

64. The NYPD has a well-documented history of using excessive force against harmless suspects while conducting investigative stops and/or arrests.

65. Over the years, the NYPD has been named as a defendant, along with the City, in lawsuits based on the unlawful and unconstitutional actions of its employees. More specifically, members of the NYPD have been accused of using excessive force during the questioning or arresting of suspects. In fact, civilian complaints have been steadily on the rise as a result of the number of NYPD officers and detectives using excessive force against the civilians that they encounter.

66. Indeed, several individuals, including a state Supreme Court judge, have accused the NYPD of using excessive force against them during questioning, arrests and in some instances, when these individuals may have been bystanders. Most of these individuals have memorialized their allegations into complaints and subsequently filing lawsuits.

67. For example, on or about June 6, 2012, State Supreme Court Judge Thomas Raffaele accused an NYPD officer of using excessive force on him while other members of the NYPD were questioning a suspect. Specifically, Judge Raffaele, alleged that, while in casual clothing, he was observing the NYPD using force while subduing a suspect and he therefore called 911. Despite